UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MARIA SANCHEZ                              :
                                           :
            v.                             :        C.A. No. 04-411A
                                           :
JO ANNE B. BARNHART,                       :
Commissioner, Social Security             :
Administration                            :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Supplemental Security Income

("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her

Complaint on September 22, 2004 seeking to reverse the decision of the Commissioner.  Plaintiff

filed a Motion to Reverse and/or to Remand the Commissioner's decision on July 22, 2005.  The

Commissioner filed a Motion for an Order Affirming her decision on September 7, 2005.  Plaintiff

replied on September 26, 2005.  With the consent of the parties, this case has been referred to me

for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.

R. Civ. P. 73.  Based upon my review of the entire record, my independent legal research, and the

legal memoranda filed by the parties, I order that the Commissioner's Motion for an Order Affirming

the Decision of the Commissioner (Document No. 12) be DENIED and that the Plaintiff's Motion

to Remand (Document No. 11) be GRANTED.

**I.      PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on January 27, 2000, alleging disability since January

1, 1989. (Tr. 83-95).  Administrative Law Judge V. Paul McGinn (the "ALJ") issued a decision on

September 25, 2003, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 16). The ALJ further found that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of sedentary work. (Tr. 23, at Finding 10). Specifically, she is able to lift and/or carry up to ten pounds occasionally, stand and/or walk for up to two hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday. (Tr. 20-21). The Appeals Council denied Plaintiff's request for review on August 18, 2004 (Tr. 5-7), rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that this Court should remand this case in accordance with sentence four of 42 U.S.C. § 405(g). Plaintiff contends that remand is warranted given the opinion of Dr. MacLean, who opined that Plaintiff cannot even perform the minimal demands of sedentary work and cannot, in fact, perform sustained work activities. (Tr. 278-279). Further, Plaintiff argues that remand is warranted because the ALJ committed reversible error in believing that Dr. MacLean's opinion was consistent with the performance of sedentary work when it was not, and in not providing any reasons for rejecting all but one portion of Dr. MacLean's opinion. In addition, Plaintiff argues that the ALJ erred in relying on the Medical-Vocational Guidelines and in not obtaining vocational expert testimony to determine whether Plaintiff's daily activities are consistent with a "sedentary work profile" is not based on substantial evidence.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id.

The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

## B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth,

if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3); 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.     Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C.

§ 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs

and laboratory findings show medical impairments which reasonably could be expected to produce

the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the

following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1ˢᵗ Cir. 1986).  An individual's

statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829

F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires

that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was thirty-eight years old at the time the ALJ issued his decision.  (Tr. 83).  Plaintiff has a seventh grade education and no past work experience.  (Tr. 97, 110, 116).  Medical records show that Plaintiff received treatment at Providence Ambulatory Health Care in 1998 for an abscess on her left thumb; folliculitis of the right upper eyelid; numbness and pain in her legs, arms, and left shoulder; pain in both feet/ankles; uncontrolled diabetes mellitus; headaches; left knee pain; dermatitis on hands and legs; strep throat; and low back pain.  (Tr. 189-200, 202-218).  The records also show that she was diagnosed with peripheral neuropathy in April and June 1998, as well as "shoulder-hand syndrome;" that she applied for SSI disability benefits in July 1998; and that she was referred to endocrinologist, Dr. MacLean in August 1998.  (Tr. 196-197, 203, 206).

Plaintiff has a history of obesity which is likely a contributing factor to her diabetes-related problems.  (Tr. 18).  Plaintiff has complained of a variety of health-related problems including frequent headaches, blurred vision, dizziness, pain and daily numbness in her hands and feet.  (Tr. 17-18).  The record reflects that Plaintiff began using Meridia in 1999.  (Tr. 18).  Meridia is an

anorexigenic agent used in the management of obesity. Id. After using Meridia, Plaintiff reported a substantial weight loss (down thirty-five pounds in August 2000). Id. However, Plaintiff subsequently regained most of the weight she had previously lost. Id.

In his decision, the ALJ found that Plaintiff has diabetes mellitus but determined that her impairment was not of listing-level severity. (Tr. 18). The ALJ then found that Plaintiff's condition was not totally disabling and she could "perform the demands of the full range of sedentary work." (Tr. 22). In particular, he found that Plaintiff is "able to lift and/or carry up to 10 pounds occasionally, stand and/or walk for up to two hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday." (Tr. 23, Finding 6). Applying the "grids," the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.

At the ALJ hearing, a medical expert, Dr. John Pella, testified that Plaintiff had a long history of uncontrolled diabetes and that she was "a significant diabetic." (Tr. 43). When asked if Plaintiff's diabetes was of listing-level severity, Dr. Pella testified that he had insufficient evidence to make that determination. (Tr. 38-39). Dr. Pella stated that Plaintiff was "limited to sedentary, may meet the listing based on primarily the lower extremity findings." (Tr. 39). Neuropathy peripheral to Diabetes Mellitus is evaluated under Listing 9.08(A). Dr. Pella noted that Plaintiff's complaints of leg pain appeared credible based on the records and that such evidence made this a "close" case as to whether Plaintiff's condition met the listing but that he would defer to the treating physician's judgment. (Tr. 43-45). Dr. Pella also advised the ALJ that "[i]t would be nice to have more information on this lower extremity cause and description of impairment. That may even – that may bring her to the listing level." (Tr. 37). At the conclusion of the hearing, the ALJ acknowledged that Plaintiff "has a severe problem" and noted that Plaintiff is "limited to sedentary

-12-

at best and it looks like she may have the neuropathy." (Tr. 49). Plaintiff's treating physician, Dr.

MacLean, completed a medical questionnaire after the ALJ hearing which confirmed Plaintiff's

"poorly controlled diabetes" and "mild sensory polyneuropathy but opined that Plaintiff's condition

was not of listing-level severity." (Tr. 391). Dr. MacLean deferred to Plaintiff's opthomologist as

to the extent of her retinitis proliferans. Id.

### A.    The ALJ Misinterpreted the Medical Evidence as Supporting a Sedentary RFC.

First, the ALJ concluded that the opinion of the medical expert, Dr. Pella, is that Plaintiff's

"condition limited her to sedentary work." (Tr. 20). While that is correct as far as it goes, it fails

to account for the fact that Dr. Pella questioned the adequacy of the information before him and

speculated as to whether Plaintiff's diabetic condition may be of listing-level severity. (Tr. 37-39).

In other words, Dr. Pella appears to conclude that Plaintiff is at least limited to sedentary work but

may be further limited.

Second, the ALJ concluded that Plaintiff's treating physician, Dr. MacLean, also limited

Plaintiff to sedentary work. (Tr. 20). Sedentary work is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and
> small tools.  Although a sedentary job is defined as one which
> involves sitting, a certain amount of walking and standing is often
> necessary in carrying out job duties.  Jobs are sedentary if walking
> and standing are required occasionally and other sedentary criteria are
> met.

20 C.F.R. § 416.967(a). Under SSR 96-9p, occasionally is further defined as meaning up to one-

third of the time but generally not exceeding more than two hours out of an eight-hour workday.

Similarly, sitting is defined as generally totaling no more than six hours out of an eight-hour

workday. Id. Finally, sedentary work generally requires an ability to stoop occasionally meaning up to one-third of the time. Id.

In his report, Dr. MacLean limited Plaintiff to lifting no more than eight pounds maximum and routinely no more than five pounds. (Tr. 278). He also opined that Plaintiff was limited to one-two hours per day of standing and sitting and that she was limited to walking one block "from neuropathy." Id. Further, he opined that Plaintiff's ability to stoop was "limited." Id.

While the Court has concerns about raising form over substance, Plaintiff correctly points out that Dr. MacLean's report imposes limitations which are greater, although not significantly so, than the regulatory definition of sedentary work. See 20 C.F.R. § 416-967(a); SSR 96-9p. The ALJ did not reject Dr. MacLean's opinion but rather found it to be supported by the record and entitled to "significant probative weight" as a treating source. See 20 C.F.R. § 416.927(d)(2). The ALJ did, however, reject Dr. MacLean's one to two hour sitting limitation but provided only a conclusory reason for doing so. (Tr. 20, fn.3).

The bottom-line is that neither Dr. Pella's testimony (Tr. 36-45) nor Dr. MacLean's report (Tr. 278-279) directly support the ALJ's finding that Plaintiff retains the RFC to perform a full range of sedentary work. This Court concludes that remand is necessary and that on remand the ALJ should specifically address the limitations imposed by Dr. MacLean. If any are rejected by the ALJ, he shall explain his reasons for doing so. See 20 C.F.R. §404.1527(d)(2) ("good reasons" will be given for the level of weight accorded to a treating source's opinion).

Although the record may ultimately support a finding of non-disability, the record suggests that this is a close case and, in fact, both the ALJ and medical expert discussed at the hearing whether Plaintiff's condition was actually of listing-level severity. This Court does not discount the

difficulty of the ALJ's job duties given the high number and complexity of the cases presented. However, this Court believes it is appropriate under the specific facts of this case for the ALJ to take a closer look at the medical evidence of record and, in particular, Dr. MacLean's report and Dr. Pella's testimony. The ALJ shall also further develop and update the medical evidence of record as necessary and further review and consider Plaintiff's RFC based on such updated record. After the initial ALJ hearing in this case, Plaintiff underwent a total abdominal hysterectomy which was performed, in part, due to Plaintiff's complaints of "long standing chronic pelvic pain," (Tr. 399, 404). There is no indication in the record as to whether this procedure relieved any of Plaintiff's reported pelvic, lower back or leg pain. Although Dr. MacLean repeatedly diagnosed Plaintiff as suffering from diabetic neuropathy, he, at one point, questioned whether Plaintiff's pain was causally related to the neuropathy. (Tr. 385). Even Dr. Pella expressed his desire for "more information on this lower extremity cause and description of impairment." (Tr. 37).

**B.     Consideration of Plaintiff's Other Claimed Errors is Premature in View of this Court's Remand Instructions**

Plaintiff claims two other errors in the ALJ's decision. First, Plaintiff argues that the ALJ's finding that she was "less than fully credible" and overstated her limitations is not supported by substantial evidence. Second, Plaintiff argues that the ALJ erred in relying on the "grids" due to the existence of substantial nonexertional limitations.

In view of this Court's conclusion that the ALJ misinterpreted the medical evidence as supporting a sedentary RFC, it is somewhat premature for this Court to go further at this point. Although the ALJ's initial credibility determination appears supported by the record, the ALJ may choose to reconsider or alternatively reaffirm that conclusion depending upon his ultimate RFC

determination on remand. Similarly, when the medical record is further developed and/or updated on remand, the ALJ can exercise his discretion at that time and determine if the record again supports reliance on the "grids" or if the record supports the existence of nonexertional impairments significant enough to preclude reliance on the "grids."

## VI.   CONCLUSION

For the reasons discussed above, I order that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be DENIED and that the Plaintiff's Motion to Remand (Document No. 11) be GRANTED. Final Judgment shall enter in favor of the Plaintiff reversing the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and remanding this matter for additional proceedings consistent with this opinion.

LINCOLN D. ALMOND
United States Magistrate Judge
October 5, 2005